T. SMITH & SON, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 13671.   Promulgated October 8, 1930.

*Nicholas Callan, Esq.*, for the petitioner.
*James L. Backstrom, Esq.*, for the respondent.

## OPINION.

PHILLIPS: The petitioner claims personal service classification for the calendar years 1920 and 1921 within section 200 of the Revenue Acts of 1918 and 1921. The respondent denied this classification and asserted the deficiency here in question. The petitioner further alleges that the services performed for the Southern Stevedoring Co. were performed by W. S. Smith in his individual capacity and prays in the alternative that its net income, as found by the Commissioner, be corrected by deducting therefrom compensation received for those services in the sum of $17,784.33 in the year 1920, and $12,844.60 in the year 1921.

It is admitted by the respondent that petitioner is entitled to the benefit of sections 327 and 328 of the Revenue Acts of 1918 and 1921 in the computation of its tax.

Section 200 of the Revenue Acts of 1918 and 1921 defines a personal service corporation as follows:

The term "personal service corporation" means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor; but does not include any foreign corporation, nor any corporation 50 per centum or more of whose gross income consists either (1) of gains, profits, or income derived from trading as a principal, or (2) of gains, profits, commissions, or other income, derived from a Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive.

Petitioner is not a foreign corporation, nor was 50 per centum or more of its income derived from trading as a principal or from gains, profits, commissions or other income derived from Government contracts. William S. Smith, the principal stockholder, was regularly engaged in the active conduct of the affairs of the corporation. It remains, then, to determine whether petitioner's income is to be ascribed primarily to the activity of its principal stockholder, and whether capital, invested or borrowed, was a material income-producing factor.

Petitioner was engaged during the taxable years in the business of stevedoring. The business had been founded about 25 years prior to 1918 by Terrence Smith, who was an experienced and successful stevedore and had built up a good reputation. About 9 years prior to 1918 Terrence Smith took his son, William S. Smith, into partnership with him. W. S. Smith was also an experienced stevedore. In 1918, for reasons growing out of a second marriage of Terrence Smith, petitioner was organized to carry on the business of the partnership. The capital stock, with the possible exception of 2 qualifying shares, was turned over for the assets of the partnership. Two hundred and thirty shares were issued to W. S. Smith

and 100 shares were issued to Terrence Smith. In 1919 W. S. Smith acquired the 100 shares of stock from his father, and in 1921 he acquired the two qualifying shares, so that in 1920 he owned all the stock except two shares, and in 1921 he was the sole stockholder.

During the taxable years petitioner's income was derived from the loading and discharging of cargo from ships. The petitioner was paid a certain price per unit of cargo loaded or unloaded, except that in complicated cases it might be paid on a cost-plus basis. It furnished and paid for the labor and supervision on the job. Its profit or loss was the difference between the amount paid it for loading or discharging the cargo and the cost to it of performing the work. In many respects it may be compared with any other contractor who engages to perform certain work at an agreed price, furnishing the necessary labor and materials. It is urged, however, in substance, that the proper handling and stowing of the cargo was of such great importance that the element which labor played in the performance of the task undertaken must be disregarded; that it was the personal skill, technical knowledge, judgment and experience of the principal stockholder which shipowners and their agents desired; and that it was these qualifications in the petitioner's organization which enabled it to secure the work in preference to others. It seems pertinent to point out that petitioner did not limit its activities to furnishing shipowners with the personal skill, technical knowledge, judgment and experience of its principal stockholder, with such incidental help as might be necessary to enable him to apply these qualifications. It is not in the position of one who supervises the work of others. It undertook to perform the entire task of loading and unloading ships, as a contractor would undertake to construct a building or a road. Expert supervision of the labor was necessary, but the same is true of any substantial undertaking. It seems doubtful whether it can be said that petitioner's income is to be ascribed primarily to the services performed by those who planned and supervised its activities, but in the instant case we find it unnecessary to base a decision upon a determination of that question. For the purposes of this case we may assume that it was personal skill, technical knowledge, judgment and experience in supervising the loading and unloading of cargo that produced the income. The record leaves no doubt that a substantial part of such income-producing activities was performed by the elder Smith, who was not a stockholder. His experience was greater than that of his son. It was he who had built up the business and the clients were those who had been served by petitioner and its predecessor for years. Either Terrence Smith or W. S. Smith had the necessary qualifications to carry on the work, and both were very active in the business during the years before us. William S. Smith, the principal stock-

holder, exercised a general supervision over the business, particularly in regard to policy and finance, but the actual supervision of loading and discharging vessels was divided between himself and his father. He personally supervised the loading and discharging of vessels serviced for the Southern Stevedoring Co. and assisted as much as his time permitted in supervising other vessels being serviced by the petitioner.

Terrence Smith was regularly and actively engaged in supervising the loading and discharging of ships serviced by petitioner, and utilized his own knowledge, experience and judgment in this work. In fact, the evidence indicates he was consulted by administrative employees in regard to these matters. Certainly he was not a mere routine employee engaged in carrying out the plans and instructions of his son. When it was necessary to formulate and draft a stowage plan where vessels were loaded with miscellaneous cargo, such plans were drafted by W. S. Smith, but not all the vessels loaded required such plans. The evidence indicates that the vessels of the Southern Stevedoring Co. and approximately only 30 of the other vessels serviced by petitioner required such plans. It was not necessary to draft plans for these other vessels serviced by petitioner which were loaded with cargo requiring less skill in loading, and there is no evidence that the discharging of vessels required extraordinary skill. Certainly Terrence Smith was capable of directing such operations. Terrence Smith was not considered an ordinary employee in the business. He was considered one of the executive heads of the business and functioned as such.

The incorporation of petitioner and the subsequent transfer of the stock held by Terrence Smith to his son were occasioned by personal reasons. Terrence Smith did not retire from the business, but remained active and performed substantially the same duties he had heretofore performed. We do not think that it would be seriously argued that in prior years he was not a primary factor in the production of income. He was the founder of the business, the senior member of the partnership, and became the president of petitioner corporation upon its organization. His name had always been connected with the business and clients expected to receive and, we believe, did receive his skill and experience as a stevedore when engaging petitioner.

Stevedoring was a very active and strenuous business which required long hours of service. In the taxable years W. S. Smith had relieved his father of some of the strain and had assumed the active business management, but Terrence Smith was by no means eliminated. He was an active figure on the docks and at the office, working from early in the morning to late in the afternoon directing the loading and discharging of vessels for petitioner. His

salary was $4,800 in 1920 and $25,800 in 1921. We think he was substantially as much of a factor in the production of income in the taxable year as was his son, and that under the facts before us petitioner's income can not be ascribed primarily to the activities of the younger Smith, and this is true whether we consider the profits from the operations of the Southern Stevedoring Co. as income to the petitioner or to W. S. Smith personally. If we consider it as belonging to petitioner, we can not overlook the fact that W. S. Smith devoted a large part of his time to those operations and the petitioner received only one-half the profits from them. If we consider that he devoted only a part of his time to petitioner's business, the conclusion must be that he left to Terrence Smith the supervision of a larger proportion of petitioner's work. In either case it directly affects the quantum of petitioner's income produced by W. S. Smith. These conditions are evidenced by the fact that in the year 1920, when the gross income from the Southern Stevedoring Co. was $267,250.94, petitioner's gross income of $1,223,031.43 yielded a profit of $52,069.49, and in 1921, when the gross income from the Southern Stevedoring Co.'s business was $146,781.45, a gross income of $913,697.77 yielded a profit of $80,838.05. The mere fact that the principal or sole stockholder of the corporation exercises general supervision over its affairs, and is the final authority in the determination of its policy, does not of itself mean that he alone is the primary factor in the production of its income, where, as here, the activities of a nonstockholder are shown also to be a primary factor in the production of the income. It is our conclusion that the claim for personal service classification must be denied.

Petitioner urges that the service rendered to the Southern Stevedoring Co. was a personal service rendered by W. S. Smith under a contract which he had entered into with Lykes Brothers, who controlled the Southern Stevedoring Co., and that the profits from that service were income to W. S. Smith and not to petitioner. W. S. Smith testified to that effect and it is certain that he personally supervised the service to the Southern Stevedoring Co. Notwithstanding this fact, the records show that this business was handled by petitioner in much the same manner as it handled all its other business. The gross receipts from the Southern Stevedoring Co. were treated in petitioner's books of account the same as any other income. "Advances" from Lykes Brothers for pay-roll purposes were received and blended with petitioner's funds. The expenses incident to the service of the Southern Stevedoring Co. were treated by petitioner in the same manner as its other business expenses, and there is nothing in the record that will enable us to segregate them from petitioner's other expenses. Nor is there anything before us from which we can determine what the net profits from the Southern

Stevedoring Co. were. In its income-tax returns for 1920 and 1921 petitioner made no segregation of the income or expenses of the Southern Stevedoring Co., but included these items in its gross income and expenses. In this condition of the record the determination of the respondent is sustained as to this issue.

Reviewed by the Board.

*Decision will be entered under Rule 62(c).*

SMITH, TRUSSELL, and SEAWELL dissent.